May it please the Court, my name is Leo Branton and I represent the appellant Koonin. Preliminarily, let me say that in wearing these dark glasses I mean no disrespect to the Court, nor am I attempting to impersonate Ray Charles or Stevie Wonder, but I am suffering from a recently developed serious dejunitive eye condition in which unless I wear these glasses I cannot see because the light affects it, and I apologize to the Court. I rise today, your honors, to attempt to have overturned one of the most egregious convictions that I have in fifty years of practice seen happen at a trial court because of the numerous errors committed there, many of them by his own lawyer. I have raised ten points on appeal. I do not believe that any of those points are frivolous. However, some of the points that I raise, perhaps four of them, in my opinion require outright reversal without any remand to the district court for further proceedings. The first such point that I want to discuss is that of the improper testimony taken before the grand jury, I'm sorry, introduced in the trial of testimony before the grand jury. The defendant was charged with one count of perjury. That one count only involved the question of whether or not the witness had seen the Noviola, who was the shooter in this attempted murder case, in the possession of a gun, and he answered no. That was the sole question charged in the grand jury indictment. But nevertheless, without objection by defense counsel, the prosecution entered into evidence the entire grand jury testimony of the witness, my client, Dr. Coonan, before the grand jury. He then asked him question by question, beginning with the first question with which he was charged as having committed perjury, a single question, and he asked the witness if he had read the grand jury transcript and did he testify as follows, and the answer was yes. Have you found out later that that was false? Yes, I did. And he told how he found it out later that it was false. The prosecutor then went question by question by question, asking the witness, well, when he testified to such and such a thing, do you remember his testimony to that? Yes. What was his testimony? He testified such and such a way. Well, did you later find out that that was false? Yes, I did. How did you find it out? And this goes on for the entire length of the grand jury testimony. Is this an objection to counsel's conduct? This is an ineffective assistance of counsel argument. It's both, Your Honor. Because, you know, we don't take that up normally, except on habeas. No, this is both, Your Honor. Without objection, what was the problem? Your Honor, by allowing questions to go beyond what the grand jury called for. It was allowed without objection by counsel, is that correct? Yes. Well, then what should the judge have done? Just was to act on his own? No, but I think it constitutes plain error as a result of what had occurred here, because it was effectively a constructive change in the grand jury indictment in violation of the grand jury clause of the Fifth Amendment. And therefore, this Court, in my opinion, can examine that issue, dear noble, whether or not there was an objection, because it constituted fairly plain error. Mr. Brand, why wouldn't it be permissible to introduce this testimony in connection with the other counts of the indictment as admissions by the defendant and otherwise admissible as admissions against interest under the rules of evidence? So isn't your argument here that it was unduly prejudicial rather than irrelevant? Yes, I make that. I make the issue that it was highly prejudicial. First place, by entering the whole grand jury testimony in and answering all of those questions, even before the defendant took the stand, everything went downhill from that point. He was literally destroyed as a defendant because of the prejudicial effect of the entry of all of those false statements. It branded the defendant a complete liar and everything he had to say thereafter. There was no chance. Mr. Brand, to go back to Judge Noonan's question, in the absence of objection by his trial counsel and conceding that the testimony is relevant, although you now say prejudicial, what is the trial judge supposed to do? I mean, this is certainly information that the jury is otherwise entitled to hear with regard to what the defendant has to say about all of the counts in the indictment for which he is facing trial. I don't think that the jury should have been able to hear the testimony about what the defendant had to say at that point. It was the first witness who ever testified about anything that the defendant in that case did. But how is this different from calling the FBI agent who says, I interviewed him on four separate occasions at his home, in my office and elsewhere, and he never gave a consistent story when I interviewed him? Because it allowed a constructive change in the grand jury indictment. And under Sterling, that is not admissible. Constructive change when the indictment charges perjury and the issue is whether or not the defendant tells the truth. So why isn't it permissible to introduce varying statements that the defendant has made on other occasions which indicate that he is not truthful in helping the jury decide whether or not he testified falsely before the grand jury? I do not believe, Your Honor, that at that stage of the proceedings, even before the defendant took the stand, they knew whether or not he was going to take the stand. It was appropriate to prejudice that jury against anything the defendant might say in the future. Do you want us to declare the rule of admissions by a party opponent to be unconstitutional? No. In a criminal case? No, but you asked earlier what should have given a limiting instruction. But again, defense counsel did not ask for a limiting instruction. But he should have asked for one. What would that limiting instruction have said? That the defendant is charged with perjury in this case only in connection with the question and answer to one question specifically stated what it was. And you are to disregard any other statements that were given before the grand jury as to whether or not those statements were found to be false. But if they're relevant and admissible, why should the jury be instructed to disregard them? Because it was in connection with the proof of something, which a single count in the indictment for one question, and they went beyond those questions. What was the jury asked to render a verdict on in terms of the perjury count? They were asked to they were told what the perjury charge was. So they weren't asked to render a verdict as to these other allegedly perjurious statements. No, no, they were not. It was not amended because the jury was not asked to return a verdict on those other statements. But we don't know whether or not that they were influenced and did, in effect, in effect, return a verdict on those other statements. Because of the fact that there were so many questions asked in connection with his grand jury testimony, including the introduction of the anti-grand jury testimony. That was improper. But why isn't it permissible to introduce a defendant's statements with regard to his version of the facts regarding all the other counts that he's charged with? arranging a murder contract for hire, traveling in interstate or foreign commerce to commit acts of racketeering, extortionate collection of debt, aiding and abetting. Aren't those statements all relevant to other counts besides the perjury? They may have been relevant, Your Honor, at a later time, but not at the time that he was attempting to prove the perjury count. He brought in these statements at the time of proving a single act of perjury and proved a lot of other acts of perjury. What is the best case on which you rely to support this theory that the judge cannot permit testimony relevant to other counts of the indictment early in the trial? Well, let me say this. I cited the United States Supreme Court case of Sturone. I have been unable to find in a Ninth Circuit case on this issue, but I did find and cited a Second Circuit case. And that was the case of the case of Russia. And in that in that case, they found that by allowing questions on the perjury count to go beyond those individual acts of perjury, was a was a constructive amendment of the of the indictment. And only a grand jury could give that. A judge couldn't. The district attorney couldn't do it. A judge couldn't. No judge could do it. But only the grand jury could change the indictment. And we we submit that there was a constructive change in the grand jury indictment by the way that this was presented. But your whole argument just seems to me as well. At what point? It wasn't the indictment. It was just this one count in the indictment. So you've got a very different situation from yes. Yes. It was one count. But it but it prejudiced the jury against the defendant on all accounts. May I proceed to the next point? In this case, the jury deliberated and they came in with a verdict. The verdict was read into the record. The jury was dismissed. And he was found guilty of all counts that were set forth in the jury verdict form.  On Monday, apparently someone in the clerk's office discovered that there was a conflict between the grand jury verdict form and what the defendant was charged with in the indictment. And so the judge called all parties back into court on Monday morning and the prosecutor announced that there was a typographical error in the jury verdict. And that. And he explained that it that it should have. What were the mistakes in it in the first place? He was found guilty of count three and he wasn't even charged in count three. He was found guilty of count five and he and he was not five and not found guilty of perjury, which was count six. So was there any error in the text of the charges in the text? You mean if you ignore the counts, if you ignore the numbers, if you ignore the numbers that were there? No. Are there any errors in the language that described the counts of which he was found guilty? No, there was no there was there was no error in the language. However, it is my belief that a defendant is charged with counts and the language just describes what the count is. So is your view that the count, the number determines what the count is as opposed to the language? I'm saying that when a defendant is charged, he's charged, for example, with count one and it says in that he did such and such a thing. Count two in that he did such and such a thing. So he is charged with in counts, not in language. The language merely describes and elaborates on the count. But we don't say he's been convicted of count one. We say he's been convicted of arranging a contract of murder for hire, don't we? In violation of a provision of Title 18 of the United States Code. Well, that was not one of that was not one of the counts where the jury made a mistake. Well, how about extortionate collection of a debt and aiding and abetting? Well, Your Honor, I'd like to get to what happened in this case. The judge, without any hearing at all, even though he called him before him, decided to change the jury verdict form to meet what he thought was the clear intent of the jury. That judge had no power to do that. I have cited two cases. The case of Stouffer in which this a similar incident like this happened. But what Stouffer did, what happened in Stouffer was that the jury gave it gave its decision. And after they gave his decision, the jury came back in and told the court that they were confused about two counts. It was a two count indictment. One count was the count of extortion from Las Vegas. The other one was extortion in Hawaii. And the jury was confused about which of the two counts. And the judge got affidavits from each juror indicating that they had made a mistake. Based upon this, then the court changed the verdicts around and found him guilty of one count rather than the other count. In that case, it made no difference because the sentence and the penalty was the same. Whether or not the man would be found guilty of extortion in Hawaii or guilty of extortion in Hawaii. Now, Mr. Grant, why would it make any difference here? I thought you said that the jury convicted him on all counts in which he was charged and he was sentenced for those counts. So how does this case differ from Stouffer? Because the jury did not find him guilty of all counts. He was charged. They found guilty of one count that he wasn't even charged with. By number, but not by description. Yeah. Sentenced for the crime. So understand why is this different from Stouffer? Why is it different from Stouffer? Because in Stouffer, the jury declared its clear intent by affidavit and by advising the court that it had made a mistake. Here, the court, by interlineation, changed the form of the verdict. And the prosecution claims that this was a clerical error. This was no clerical error. This was a judicial error. And he kept, he says throughout his papers that it was a typographical error. Well, it was not a typographical error. It was an error made by the jury. And it's obvious that the jury just rubber stamped that verdict because neither the judge nor counsel, nor the jury paid any attention to what was in that jury form. Does it make a difference that the jury was polled when they returned their verdict in the courtroom before they were discharged and asked whether or not this was their verdict? Yes, they did that. Okay. So I guess my question is, is that sufficient in this case in order for the judge to conclude that he is able to discern the intent of the jury by virtue of the fact that they declared that this was their verdict? No, because what the jury, what was read into the record was that he was found guilty of count four. He was found guilty of count three. He was found guilty of two. There was no description of what the count was, what the jury read into the record. They didn't read that language into the record. Well, they signed and returned the intended the form presumably to the court. Did they not when they entered the courtroom? In other words, they had to give they had to give the jury verdict form back to. Yes. Yes. And that became part of the record. Right. Yes. And then they were asked whether or not this reflected their verdict. Yes. And each juror said yes. Yes. But it didn't. How could how could how could it reflect their their. How could the fact that he was found guilty of a count with which he was not even charged. How could that be the verdict of the jury? And there's another case that I cited, and that's Russia. And I think it's highly significant to this case. In Russia, the judge sentenced a defendant to sentences that he declared to be concurrent. And that was his sentence, concurrent sentences. And then when the clerk got ready to enter the record and enter the sentence in the record, it was discovered that he had said concurrent. And somehow it was called to the attention of everybody that the judge meant to say consecutive. And the judge stated, I meant to say consecutive. And even his defense lawyer said, well, I've never known your honor to give concurrent sentences in cases like this, which is something the prosecution should say, not the defense lawyer. But in any event, the court ruled that it doesn't make any difference whether the judge changed his mind or whether he misspoke himself or not. Even if he misspoke himself, once he entered that jury verdict and he announced it in court, that was it. And he had no power to change it thereafter. I say that once this jury came in with a form in which they found him guilty of certain counts, that the judge had no power or authority to change that verdict form as he did in this case. May I may I speak if I might have a few minutes on the issue of 30 seconds. I beg your pardon. 30 seconds. I meant what I said when I came out on the bench this morning. We've got a heavy calendar and I'm going to hold you to your time. Well, your honor, the cases of ineffective assistance of counsel are monumental in this case. And I think the strongest evidence and proof of the ineffective assistance of counsel is the affidavit declaration, which defense lawyer filed in order to try to show that it was good trial strategy. You look at that document and you can see that what he states in there is good trial steps, tactics. It doesn't make any sense even to a first year law student. And therefore, I think that every instance that I raise of ineffective assistance of counsel, which this court can rule on de novo, should be found to be ineffective. Thank you, counsel. Thank you. Mr. Harrigan. Good morning, your honor. Shane Harrigan for the United States. Your honor, I'll address appellant's counsel's arguments in order. First, to answer Judge Rawson's question, what was the jury instructed as to the false declaration charge? At the appellee's supplemental excerpt of record, page 225, the instruction is very clear. They were told that in order to find defendant guilty of making a false declaration for a grand jury, they must find that he made material false statements as detailed in the indictment. At no time were they told you can find him guilty of the false declaration charge based on other false declarations. At no time did governor counsel, myself, argue to that to the jury. In fact, as Judge Tolman pointed out, I argued that those statements, those other false declarations, the multiple stories he told were strong circumstantial evidence of his knowing participation in this murder-for-hire plot and evidenced his concerted effort to cover up his involvement in that murder-for-hire plot. The single case cited by appellant's counsel, Roscoe, is an opposite. In that case, if you read the facts, the Second Circuit held that the trial court erred by permitting the prosecutor to prove a conspiracy by proving an object not charged in the indictment. That's not what occurred here. The trial court didn't permit or didn't instruct them they could find guilty of false declaration based on other false declarations, nor did the government argue it. Addressing the issue of the correction in the verdict form, the trial court properly corrected a clerical error pursuant to Rule 36 to reflect the true intent of the jury. That is permitted by Rule 36. The court can correct clerical errors or errors in the record from oversight at any time. And if the court may indulge me, I'd like to use in my argument a blow-up, which is at page 10, of the appellant's excerpt of record, and that simply is a blow-up of the corrected verdict form. And I'll say at the outset that the verdict form was reviewed by a government counsel myself. I say that with chagrin. Not closely enough. I'd like to never say never, but I hope that will never happen again in my career. It was reviewed by defense counsel, and it was reviewed by the court. And clearly there was an error in it as to two of the counts were misnumbered, the extortion collection of debt and, well, as the false declaration. Those were misnumbered, and the reason for that was, as the court knows, he was charged in a six-count superseding indictment with only five of those counts. But I would point out, as you look and as Judge Rawlinson pointed out, each of those five charges were different. And each of the text or description of each of those five charges, when you look at the verdict form, was correct. And if you look at the verdict form, the jury voting guilty as to each of those five charges. If you ignore the count numbers, which I submit are superfluous since there were no other counts other than these five charges, the verdict form is unassailable. In fact, counts one and two, standing alone, where they find the correct description and the correct count number, those are unassailable. And I would submit that count five is also because the count number wasn't necessary. So what you're left with is the false declaration and the extortionate collection of debt by extortionate meanings counts. And the question this court has to look at first is, do those two errors, misnumbering, call into question the entire verdict? And the answer is a resounding no, despite what appellant's counsel argues. As cited at the appellate's brief at page 22, the seminal case is United States v. Powell. In that case, the Supreme Court found that inconsistent verdicts will not overturn the entire verdict, will not overturn the verdict. Why, then, are these just clerical errors, these two counts? Was the court correct? Well, exactly for the reason appellant's counsel said. The jury couldn't have intended to record or write what is written down there. And that's the issue. That's what this court must look at. Was it a blunder in execution? And the question is, is what is recorded or written on the jury form, is that what the jury intended to do? The jury couldn't have intended to convict him of count three. He wasn't charged in count three. In fact, it was a court appellant was charged with a different charge. The only explanation is it was oversight. Count three was never mentioned in the jury instructions. The jury instructions correctly referred to each count by its proper description and by its proper number. And the same can be said of the false declarations. In order to believe that they intended to convict him of count five in the false declarations count, you have to believe that the jury acted irrationally and decided to convict him twice of the same count. The jury instructions were sent into the jury room during deliberation? The jury instructions were. I do not believe the indictment was. And that may have been part of the problem with this. So that's why the jury missed it, because I'm actually surprised that 12 jurors didn't catch it. I'm surprised that I missed it. So as I say, with much embarrassment. But yes, the jury instructions, I believe, did go into the jury room with the jury. I don't know if the record reflects that, but that's my recollection. But the indictment was not. No, I do not recall the indictment going into it. The indictment was read to them at the beginning, I believe, of the case. But in any event, the question becomes, really, did, for de novo review, was there a clerical error? And the question is, of course there was, because they couldn't have intended to record this. Then the issue this Court has to look at, was the judge clearly erroneous in changing the verdict form? And the answer is no. That's based on rational common sense, that this is what the jury had to intend. The same oversight that the Court missed, that counsel missed, the jury did. Your Honor, finally, as to the ineffective assistance. And the defendant, the repellent, makes several claims of ineffective assistance. And I would submit that, as to each and every one of those, he cannot meet the Strickland case. He makes a lot of complaints about motions not being filed. The only mention here today was that he found egregious that trial counsel filed an affidavit in support of his conduct during trial. That was done, obviously, at the government's request, because we had a motion for new trial, which counsel filed, which claimed counsel was ineffective. And he did that, as I view the record reflects, after consulting with other outside counsel. And I completely disagree with this characterization of what counsel says in that affidavit. It does support good, sound trial strategy. Mr. Harrigan, let me ask you then, in response to Judge Noonan's question, is the government urging us to decide the IAC issues on direct appeal because the record is adequate to permit us to do so? I believe it is adequate. There were declarations submitted by the trial counsel. There was complete briefing on all the issues. The defendant was given the opportunity to present evidence. He did only present, I would point out, a declaration, which really the only thing it addressed was his claim that he thought they were going to file a motion to suppress. As to all the other claims, I would point out to this Court, there's no support by defendant that these things occurred. There's nothing to rebut what trial counsel said. And based on that, it's apparent that it is good, sound trial strategy. And this claim of not filing these motions, if you look at this case, I would point out, really the issues in this case are very simple. What's the annoying participant in this scheme? Did he provide the gun? And the issue was, were they going to believe our cooperator, the hit man? And were they going to believe our agents who gave testimony to the jury of his multiple versions, his four versions of events? Because those showed his participation in the scheme. And that's where his trial counsel effectively spent his time. He cross-examined the hit man on the fact that he was an admitted hit man, on the benefits he was getting based on his testimony, on the fact that he had contradictions in his prior statements to the government, and he cross-examined thoroughly and effectively the agents for failing to tape record all these statements and questioned them effectively on whether those were actually his statements or could they have misrecollected that. And he argued that case effectively to the jury, as well as arguing the fact that even though there was no bad faith in terms of the destruction of the gun, he effectively argued that the government's destruction of that gun created a reasonable doubt. He was permitted to do that. In sum, there was no deficiency. There was no prejudice. Is there no further questions? Apparently not. Thank you. Thank you. The case as argued is submitted.
judges: Noonan, Tallman, Rawlinson